DECISION.
{¶ 1} Plaintiff-appellant, Veterinary Dermatology, Inc. ("VDS"),[1]
appeals from the trial court's entry of summary judgment in favor of defendants-appellees, Stephanie Bruner, D.V.M., Greater Cincinnati Veterinary Services, P.S.C. ("GCVS"), and Greater Cincinnati Veterinary Specialty and Emergency Services, LLC ("GCVSES"). For the following reasons, we affirm.
 Factual Background {¶ 2} Patrick Breen, D.V.M., owned VDS, a veterinary practice specializing in dermatology. One of the offices operated by VDS was located in Taylor Mill, Kentucky. VDS leased the office space from Dr. Paul Shealy.
 {¶ 3} In April 1999, Dr. Bruner began her employment with VDS. Dr. Bruner signed an employment agreement that set forth her compensation and included a restrictive covenant that prohibited her from competing with VDS for one year following the termination of her employment. After Dr. Bruner began working at the Taylor Mill location, Dr. Breen rarely went there.
 {¶ 4} Dr. Bruner's husband, Joseph Bruner, D.V.M., specialized in veterinary internal medicine.[2] His corporation, GCVS, opened a practice in the same Taylor Mill facility from which VDS operated, and it leased its office space from Dr. Shealy. The Bruners were the sole shareholders of GCVS, owning equal shares of the corporation. Dr. Breen was unaware of Dr. Bruner's affiliation with GCVS.
 {¶ 5} In July 2000, Dr. Bruner was placed on the payroll of GCVS and was paid an annual salary of $25,000 for performing administrative functions. Dr. Bruner did not perform veterinary services for GCVS. She worked for GCVS for, at most, a few hours a week and did so when she was not scheduled to work for VDS.
 {¶ 6} In 2000, after Dr. Bruner had obtained her board certification, she signed a revised employment agreement with VDS. The revised agreement set forth a greater level of compensation for Dr. Bruner. Otherwise, in all relevant aspects, the agreement remained unchanged.
 {¶ 7} On November 4, 2002, GCVS and Fisher Hall, Inc., formed GCVSES, a veterinary emergency service. GCVS owned a fifty-percent share of GCVSES. In December 2002, GCVSES opened a practice in a facility in Wilder, Kentucky. Dr. Joseph Bruner moved his GCVS practice from Taylor Mill to the new Wilder facility.
 {¶ 8} At some time in the fall of 2002, Dr. Breen and both of the Bruners had engaged in discussions about moving the VDS practice from its Taylor Mill location. Dr. Breen testified, "[D]iscussions were started between myself and Dr. Joseph Bruner and Stephanie Bruner about moving the office, if they were going to move, and they said they were going to move, would I move with them." Dr. Breen testified that he moved his office to the Wilder facility because he had "tried to be supportive."
 {¶ 9} In December 2002 or January 2003, Dr. Bruner arranged to move VDS's veterinary supplies, which included items such as bandages, drugs, and small instruments, from Taylor Mill to Wilder. VDS did not move any equipment from Taylor Mill because the veterinary equipment, such as examination tables, had been provided by Dr. Shealy for use by VDS.
 {¶ 10} VDS operated from the Wilder facility for several months while the parties attempted to agree on lease terms. During that time, the parties exchanged several drafts of lease agreements. Despite their efforts, the parties failed to reach an agreement on the terms of a lease.
 {¶ 11} Following the dispute over lease terms, Dr. Bruner submitted her resignation to VDS on April 9, 2003. VDS filed this action against Dr. Bruner, GCVS, and GCVSES, in June 2003. VDS asserted claims of breach of contract, breach of an employee's duty of loyalty, fraud, negligent misrepresentation, promissory estoppel, misappropriation of trade secrets, tortious interference with business relations, unfair competition, and unjust enrichment. The trial court granted summary judgment in favor of Dr. Bruner, GCVS, and GCVSES. This appeal followed.
 Trial Court's Duty in Considering a Summary-Judgment Motion {¶ 12} In its first assignment of error, VDS argues that the trial court erred by granting summary judgment to the defendants because the court did not construe the facts in a light most favorable to VDS. Specifically, VDS argues that the court copied extensive portions of the defendants' memoranda and failed to consider evidence presented by VDS.
 {¶ 13} When ruling on a motion for summary judgment, a trial court must examine all appropriate evidentiary materials submitted by the parties.[3] These materials, listed in Civ.R. 56(C), include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and any written stipulations of fact.[4] Although we review a grant of summary judgment de novo,[5] we recognize that our consideration of the record cannot cure a trial court's failure to examine the evidence on its own.[6]
Following our examination of the record, we note that the trial court's statements of fact were supported by appropriate evidentiary materials filed in the case. Furthermore, because nothing in the record demonstrates that the trial court failed to examine all appropriate materials, or that it failed to consider the facts in a light most favorable to VDS, we hold that reversal of the court's entry of summary judgment is not warranted.[7] Accordingly, we overrule the first assignment of error.
 Summary Judgment was Proper {¶ 14} In its second assignment of error, VDS argues that the trial court erred in granting summary judgment in favor of the defendants because issues of material fact remained on its claims for breach of an employee's duty of loyalty, breach of the noncompetition provision in the employment agreement, fraud, and negligent misrepresentation.
 {¶ 15} The defendants were entitled to summary judgment only if (1) there was no genuine issue of material fact; (2) they were entitled to judgment as a matter of law; and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of VDS, and that conclusion was adverse to VDS.[8]
 a. Employee's Breach of Duty of Loyalty {¶ 16} In order to demonstrate that an employee breached her duty of loyalty to her employer, the employer must demonstrate that the employee engaged in competition with the employer.[9] In this case, VDS claimed that Dr. Bruner was disloyal because she had (1) placed certain misleading advertisements, and (2) failed to mention Dr. Breen or VDS during an interview with a newspaper reporter. Following our review of the record, we conclude that VDS failed to demonstrate that a question of material fact remained concerning whether Dr. Bruner had engaged in competition with VDS during her employment.
 {¶ 17} First, VDS argued that Dr. Bruner had placed a newspaper advertisement for VDS that included her name, but did not include Dr. Breen's name. The advertisement listed the telephone number and address for VDS's new office in Wilder, Kentucky. The record reveals that Dr. Bruner was the only VDS doctor practicing in the Wilder office, so the failure to include Dr. Breen's name in the VDS advertisement was immaterial.
 {¶ 18} VDS also claimed that when Dr. Bruner placed an advertisement for GCVS in a business telephone book, she listed herself as a dermatologist in the GCVS practice. But the record demonstrates that, due to a typographical error on the part of the telephone-book company's staff, the advertisement incorrectly listed Dr. Bruner as a dermatologist in the GCVS practice. A customer-service manager from the telephone-book company wrote a letter of apology to Dr. Bruner for the company's error.
 {¶ 19} Next, VDS argued that when a local newspaper published an article about the emergency facility operated by GCVSES, the article made no mention of Dr. Breen or VDS. Although the reporter who wrote the article had interviewed Dr. Bruner, among others, for the article, the record demonstrates that Dr. Bruner had no control over the article's contents.
 {¶ 20} Because VDS failed to demonstrate genuine issues of material fact on its breach-of-loyalty claim against Dr. Bruner, we hold that the trial court properly granted summary judgment in favor of Dr. Bruner on the claim.
 b. Breach of Noncompetition Provision {¶ 21} VDS argued that Dr. Bruner had violated the noncompetition provision of her employment agreement. Specifically, VDS argued that Dr. Bruner had used VDS office time for her competing interests, and that she had performed dermatological work on an animal through GCVS.
 {¶ 22} Dr. Bruner's employment agreement with VDS contained the following provisions:
 {¶ 23} "5. EXTENT OF SERVICES Employee shall devote her entire professional time, attention and energies to the practice of Employer and shall not, during the term of this Agreement, without the prior written consent of Employer, render the professional services of a Doctor of Veterinary Medicine or a Veterinary Dermatologist to any other persons, firms, associations or corporations. All income generated by Employee for professional services, and all activities related thereto, shall belong to Employer, unless Employer has expressly permitted any such income to be retained by Employee.
 {¶ 24} "6. RESTRICTIVE COVENANT (A) During her employment and for a period of one year after the termination of that relationship, by either party for any reason, Employee covenants and agrees with Employer as follows:
 {¶ 25} "(1) Employee shall not, directly or indirectly, reproduce, use, disclose, reveal or communicate to any person or entity any confidential materials or information of the Employer, including, but not limited to, information pertaining to any of Employer's patients, clients, Employer's methods of operation, operations manuals, unique systems, trade secrets, and computer systems or operations.
 {¶ 26} "(2) Employee shall not accept employment with or have any interest in any business, practice or firm, engaged primarily in the field of Veterinary Dermatology, which competes with Employer, directly or indirectly, within a fifty mile radius of any of Employer's offices located in Cincinnati, Ohio, Lexington, Kentucky, Louisville, Kentucky or Taylor Mill, Kentucky.
 {¶ 27} "(3) Employee shall not, directly, indirectly or through any other person, practice, firm, corporation or entity, call on, solicit or communicate with any of Employer's patients or clients for the purpose of obtaining referrals for Veterinary Dermatology services."
 {¶ 28} In support of its claim that Dr. Bruner had breached her employment agreement, VDS pointed to the same telephone-book and newspaper advertisements that it had cited in support of its breach-of-loyalty claim. But VDS failed to demonstrate how either advertisement evidenced a breach of the employment agreement by Dr. Bruner. The record shows that Dr. Bruner's newspaper advertisement specifically promoted VDS, and that the telephone-book company, not Dr. Bruner, had erred in listing Dr. Bruner as a veterinary dermatologist with GCVS.
 {¶ 29} In further support of its claim that Dr. Bruner had breached her employment agreement, VDS argued that Dr. Bruner had performed veterinary dermatology work for GCVS for a certain canine patient in April 2003. The animal belonged to a GCVS employee's mother, and its GCVS treatment record indicated that Dr. Bruner had prescribed two medications for it. But Dr. Bruner testified that the listing of her name was a clerical error because the animal was her husband's patient.
 {¶ 30} Dr. Breen testified that he had no evidence to demonstrate that Dr. Bruner ever worked for GCVS at a time when she should have been working for VDS. He further testified that he could not dispute Dr. Bruner's testimony that she had devoted one hundred percent of her working time to the business of VDS. Dr. Breen stated that he did not have "any qualms that she's not living up to the covenant of not working for one year." Because VDS failed to present evidence demonstrating that a question of material fact existed, the trial court properly granted summary judgment on its breach-of-contract claim.
 c. Fraud {¶ 31} The elements of a claim for fraud are "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."[10] If any of the elements is not proved, the plaintiff cannot recover.[11]
 {¶ 32} VDS's fraud claim against Dr. Bruner, GCVS, and GCVSES was based on its allegations that Dr. Joseph Bruner, on behalf of GCVS and GCVSES, had represented to Dr. Breen that a written lease for VDS at the Wilder facility would be no problem. The fraud claim was further based on VDS's allegations that Dr. Bruner had concealed from VDS her ownership interests in GCVS and GCVSES.
 {¶ 33} VDS alleged that, but for the false statements of lease negotiability and the concealment of Dr. Bruner's interest in GCVS, it would not have moved its practice from Taylor Mill to Wilder, Kentucky. VDS argued that if the Bruners had not committed fraud, it would have otherwise continued to maintain a viable practice in northern Kentucky. But VDS's claim was unsupported by the record.
 {¶ 34} VDS failed to demonstrate the falsity of the statements by the Bruners that a lease was "no big deal" and was "totally negotiable." The record demonstrates that the parties exchanged several drafts of proposed lease agreements. Despite their efforts, the parties failed to reach an agreement on the terms of a lease. But the parties' failure to reach an agreement during their lease negotiations did not render false the Bruners' statements with respect to the negotiability of a lease.
 {¶ 35} Moreover, Dr. Breen admitted in his deposition that, in making his initial ten-year-term proposal for the lease, he had included the longer term because he understood that the parties were engaged in a negotiation process. Dr. Breen intended to propose a longer term, knowing that the counterproposal could be for a shorter term. Dr. Breen testified that his proposal had "set forth some terms that were a little higher. You can always come down, but you can't go up. * * * You don't go in low."
 {¶ 36} Dr. Breen acknowledged that the lease VDS had had with Dr. Shealy at the Taylor Mill facility was similar to the standard short-term commercial lease proposed by GCVSES, and that he and Dr. Joseph Bruner had intended a similar lease for the Wilder facility. Dr. Breen's first lease proposal to Dr. Joseph Bruner was accompanied by a letter stating, "You have indicated in conversation that you would like to have VDS as a part-time tenant at your new facility and that the arrangement should be just as it has been with Paul [Shealy]." Dr. Breen admitted that he could have signed the GCVSES lease, but that he chose not to do so.
 {¶ 37} Dr. Breen failed to demonstrate that the Bruners, on behalf of GCVSES or GCVS, had made false statements with respect to the negotiability of the lease. The Bruners participated in lease negotiations with Dr. Breen. Dr. Breen could not reject the proposed lease terms and then claim that the defendants committed fraud by not engaging in negotiations.
 {¶ 38} Next, VDS claimed that Dr. Bruner had concealed material facts about her interests in GCVS and GCVSES, and that VDS would not have moved its office from Taylor Mill to Wilder had it known of Dr. Bruner's interests. VDS claimed that Dr. Bruner "engaged in a material concealment when she failed to disclose that she was on both sides of the [lease] deal."
 {¶ 39} First, we note that Dr. Breen admitted in his deposition that he and the Bruners had discussed the moving of VDS to Wilder when GCVS moved there. Dr. Breen claimed that Dr. Bruner was "on both sides of the deal," yet the record demonstrates that she had not taken part in any lease negotiations on behalf of VDS. Dr. Breen was the only one who negotiated on behalf of VDS. Further, Dr. Breen testified that Dr. Joseph Bruner had made it clear to him that any lease negotiations on behalf of GCVSES would be conducted by Dr. Bruner. VDS failed to demonstrate that a question of material fact existed concerning the concealment by Dr. Bruner of a material fact upon which it relied to its detriment, so the trial court properly entered summary judgment in favor of the defendants on the fraud claim.
 d. Negligent Misrepresentation {¶ 40} "The elements of negligent misrepresentation are as follows: `One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'"[12] While the tort of fraud contains an element of intent, the tort of negligent misrepresentation is characterized by the failure to exercise reasonable care.
 {¶ 41} VDS argued that Dr. Bruner had committed negligent misrepresentation by failing to disclose that she was a shareholder, director, and officer of GCVSES and GCVS. But a claim for negligent misrepresentation does not lie for omissions; there must be an affirmative false statement.[13] The only affirmative false statement that VDS attributed to Dr. Bruner, and to Dr. Joseph Bruner on behalf of GCVSES and GCVS, was that the lease was "totally negotiable." As we have discussed, VDS failed to present evidence demonstrating that that statement was false. Accordingly, the trial court properly granted summary judgment in favor of the defendants on VDS's negligent-misrepresentation claim.
 e. No Argument Made on Remaining Claims {¶ 42} VDS has stated in its brief that summary judgment was erroneously granted on its additional causes of action "for substantially the same reasons argued herein. For the sake of economy, additional argument on these additional claims is not included here, but [VDS] requests reversal as to those claims as well." We decline that invitation. App.R. 16(A)(7) requires the appellant to include in its brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." VDS has not done so with respect to the remaining causes of action. Accordingly, we overrule the second assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Gorman, P.J., and Sundermann, J., concur.
[1] Veterinary Dermatology, Inc., used the trade name "Veterinary Dermatology Services."
[2] We refer to Stephanie Bruner as "Dr. Bruner" and to Joseph Bruner as "Dr. Joseph Bruner."
[3] See Civ.R. 56(C); Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358,1992-Ohio-95, 604 N.E.2d 138.
[4] Murphy at 359-360, 1992-Ohio-95, 604 N.E.2d 138.
[5] See Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186,738 N.E.2d 1243.
[6] Murphy at 360, 1992-Ohio-95, 604 N.E.2d 138.
[7] At oral argument, counsel for VDS alleged that three depositions in the case file had not been opened. Following our review of the record, we are unable to determine whether the depositions were opened, so we must presume regularity in the proceedings below. See Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384. See, also,Ohio Attorney General v. John Doe 26 (2000), 141 Ohio App.3d 242, 254,750 N.E.2d 1149.
[8] See Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241.
[9] See Berge v. Columbus Community Cable Access (1999),136 Ohio App.3d 281, 326, 736 N.E.2d 517.
[10] Gaines v. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55,514 N.E.2d 709, citing Burr v. Stark Cty. Bd. of Commrs. (1986),23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus, andCohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 462 N.E.2d 407.
[11] Westfield Ins. Co. v. Huls Am., Inc. (1998), 128 Ohio App.3d 270,296, 714 N.E.2d 934.
[12] Delman v. Cleveland Heights (1989), 41 Ohio St.3d 1, 4,534 N.E.2d 835; see, also, Universal Contr. Corp. v. Aug, 1st Dist. No. C-030719, 2004-Ohio-7133.
[13] See Gentile v. Ristas, 160 Ohio App.3d 765, 789, 2005-Ohio-2197,828 N.E.2d 1021, citing Leal v. Holtvogt (1998), 123 Ohio App.3d 51,62, 702 N.E.2d 1246; see, also, Textron Financial Corp. v. NationwideMut. Ins. Co. (1996), 115 Ohio App.3d 137, 149, 684 N.E.2d 1261.