**ORBIT ELECTRONICS, INC., Appellee,**

v.

**HELM INSTRUMENT CO., INC., Appellant;  WCISLEK, Appellee.**

[Cite as *Orbit Electronics, Inc. v. Helm Instrument Co.,
Inc.,* 167 Ohio App.3d 301, 2006-Ohio-2317.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 86571 and 86963.

Decided May 11, 2006.

302

Michael P. Harvey Co., L.P.A., and Michael P. Harvey, for appellee Orbit Electronics, Inc.

Eastman & Smith, Ltd., Matthew D. Harper, Jeffrey M. Stopar, and Anthony O. Modd, for appellant.

Douglas A. Wilkins, for appellee Donald S. Wcislek.

---

COLLEEN CONWAY COONEY, Presiding Judge.

{¶ 1} In this consolidated appeal, defendant/third-party plaintiff-appellant, Helm Instrument Co., Inc. ("Helm"), appeals the trial court's decision granting directed verdicts in favor of plaintiff-appellee, Orbit Electronics, Inc. ("Orbit") and third-party defendant-appellee, Donald Wcislek. Finding no merit to the appeal, we affirm the court's judgment but modify the order involving sanctions.

{¶ 2} Helm is an Ohio-based company that builds process controls and factory automation systems. For 34 years, Wcislek was employed as Helm's purchasing agent, responsible for the purchase of the electronic components necessary for the company's manufacturing needs.

{¶ 3} Orbit is a small Ohio-based company that brokers electronic components. Helm began purchasing parts through Orbit in 1998 and quickly became one of the vendor's biggest customers.

{¶ 4} In 2003, Helm's employee Dennis Williams assumed Wcislek's duties while he was on vacation. Williams began to compare the prices paid for parts bought through Orbit to the price paid for the same part bought from other vendors. As a result of the comparison, Helm began to investigate Wcislek's buying practices. The company discovered that it was paying substantially more for parts from Orbit than from other vendors. When Wcislek returned from vacation, he was instructed not to buy any products from Orbit.

{¶ 5} Shortly thereafter, Wcislek began to buy electronic components from CMA Electronics. Helm soon discovered that CMA Electronics and Orbit were the same company. Helm subsequently fired Wcislek and refused to pay Orbit's outstanding invoices.

{¶ 6} Orbit filed suit against Helm seeking $78,392.03 in damages plus costs and interest, for outstanding invoices. Helm, in turn, filed a counterclaim alleging a civil conspiracy between Orbit and Wcislek. Helm alleged that Orbit and Wcislek were engaged in a scheme to artificially inflate prices for the goods sold by Orbit to Helm over the course of five years and thereby engaged in a fraud against Helm. Helm also filed a third-party complaint against Wcislek alleging civil conspiracy, breach of the duty of loyalty, breach of contract, unjust enrichment, and claims for indemnity.

{¶ 7} After pretrial motion practice and discovery were completed, the case was reassigned to a visiting judge. The matter proceeded to a jury trial. At the close of Helm's case, Wcislek and Orbit moved for a directed verdict. The trial court granted both motions and awarded Orbit $78,392.03 plus pre- and post-

judgment interest. The court also dismissed Helm's counterclaim against Orbit and the claims against Wcislek. Helm filed its first notice of appeal.

{¶ 8} Shortly thereafter, Wcislek and Orbit filed motions for sanctions against Helm. Pursuant to Civ.R.11 and R.C. 2323.51, the court sanctioned Helm and granted Wcislek $10,876.81 for attorney fees, $543.22 in personal expenses, and $5,000 for stress and lost time. The court granted Orbit $27,686 for attorney fees and $10,025 for "miscellaneous." Helm filed its second notice of appeal, and we consolidated both appeals. In its appeal, Helm raises five assignments of error.

Discovery

{¶ 9} In the first assignment of error, Helm argues that the trial court erred in failing to require Orbit to make full disclosure of documents before trial. Helm alleges that the trial court improperly proceeded to trial before discovery was complete. Despite repeated orders by the first judge assigned to the case, Helm claims that Orbit never turned over financial documents that would show an improper financial relationship between Orbit and Wcislek.

{¶ 10} Pursuant to Civ.R. 26(B)(1), the scope of discovery includes "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Notwithstanding the liberal discovery provisions contained in the rules, rulings regarding pretrial discovery lie solely within the discretion of the trial court. Absent an abuse of discretion that prejudicially affects a substantial right of the moving party, an appellate court must affirm a trial court's disposition of discovery issues. *State ex rel. V. Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198; *Jaric, Inc. v. Chakroff* (1989), 63 Ohio App.3d 506, 579 N.E.2d 493.

{¶ 11} Helm claims that it was error for the trial court to proceed to trial contrary to a prior order from the first judge. In October 2004, both Orbit and Helm filed motions to compel and for protective orders. The trial court issued an order granting their motions in part and stating that the parties were to stipulate to an agreed protective order. The protective order was executed in January 2005.[1] Two months later, Helm filed its final pretrial statement. In the statement, the company complained that Orbit had yet to comply with its discovery requests. The trial court issued an order stating that the "parties shall cooperate in production of documents." A few days after that order, Helm filed a motion to continue the trial date, to compel, and for sanctions. In its motion,

---

**1.** Although Helm claims that at this pretrial the court again ordered Orbit to produce all financial documents, the journal entry from the pretrial simply states, "Pretrial held to resolve discovery disputes. Case proceeds as scheduled."

Helm alleged that the contents of Orbit's QuickBooks software system had not been turned over in discovery.

{¶ 12} In response to Helm's latest motion, the trial court continued the trial date for a month. The order issued on April 11, 2005, stated, "The motion to continue trial, to compel, and for sanctions * * * is granted and denied in part." Helm alleges that the trial court's staff informed counsel that the motion to continue and the motion to compel were granted and the motion for sanctions was denied. However, the court never issued any other order, which rendered its previous order ambiguous. Helm wrote Orbit stating that it needed all financial records by April 27, 2005, but did not specifically request a copy of the QuickBooks software.

{¶ 13} It is undisputed that Orbit did not produce its QuickBooks system for Helm's review.[2] In mid-May, the trial court transferred the case to a visiting judge. On the first day of trial, Helm indicated that it had not received a complete copy of Orbit's QuickBooks system.[3] Orbit responded that the QuickBooks information is simply a compilation of information that it had already provided to Helm. Orbit claimed that it produced the company's checks and financial information, accounting records, and thousands of pages of original documents and materials. Moreover, Orbit argued, Helm never filed a motion for electronic data; therefore, they were not entitled to a copy of the software. Helm responded that the software system contained cash disbursements, which were necessary to show the financial link between Orbit and Wcislek. The trial court denied Helm's motion, stating:

> I don't see how we're going to delay this trial just so you can get information, frankly, that I don't believe you're entitled to. And whatever order has been made previous to this date is not clear, as far as I can see. And I believe because it is not clear does not entitle you to receive the plaintiff's financial records, which I understand you to be [seeking].

{¶ 14} We find that the trial court did not abuse its discretion in denying Helm's motion. The trial court's ruling was not contrary to a prior court order. The previous order was ambiguous. Either party could have asked for formal clarification of its rights and duties pursuant to the order. Orbit provided a considerable amount of documents to Helm in discovery. Helm is unable to show that the court acted arbitrarily in denying its motion or that the information sought would have done anything to bolster its case. We are cognizant of the

---

2.  The record shows that Orbit requested clarification from Helm as to exactly which financial records were being requested. The record does not reflect that Orbit ever received that clarification.

3.  Helm concedes that they received partial QuickBooks records from Orbit's accountant.

fact that Helm cannot show that the missing information would assist its case without discovery of that information. However, Helm could have filed any number of motions specifically related to the QuickBooks system prior to the trial date.

{¶ 15} Moreover, Helm had a week after being notified of the transfer to a new judge to notify the new judge about any outstanding discovery issues prior to trial but instead waited until after the jury had been impaneled to bring the issue to the court's attention. The trial court was well within its discretion to deny Helm's last-minute request. The first assignment of error is overruled.

## Fifth Amendment

{¶ 16} In the second assignment of error, Helm argues that the trial court erred by prohibiting disclosure of Wcislek's invoking the Fifth Amendment in his refusal to answer any questions in Helm's discovery requests. Helm claims that it should have been able to publish Wcislek's discovery responses to the jury and make a negative inference from his invocation of his right to remain silent.

{¶ 17} Prior to trial, Wcislek filed a motion in limine to prohibit any mention of his assertion of the Fifth Amendment. The purpose of a motion in limine " 'is to avoid injection into [the] trial of matters which are irrelevant, inadmissible and prejudicial[,] and granting of [the] motion is not a ruling on evidence and, where properly drawn, granting of [the] motion cannot be error.' " (Bracketed material sic.) *State v. French* (1995), 72 Ohio St.3d 446, 449, 650 N.E.2d 887, quoting Black's Law Dictionary (6th Ed.1990) 1013. A ruling on a motion in limine reflects the court's anticipated treatment of an evidentiary issue at trial and is a tentative, interlocutory, precautionary ruling. *Algood v. Smith* (Apr. 20, 2000), Cuyahoga App. Nos. 76121 and 76122, 2000 WL 426554. Finality does not attach to the court's preliminary ruling but rather attaches only after the issue becomes ripe for determination during the trial and the trial court makes its final determination as to the admissibility of the evidence. *State v. Grubb* (1986), 28 Ohio St.3d 199, 28 OBR 285, 503 N.E.2d 142. Thus, a motion in limine is not sufficient to preserve a trial court's ruling on the admission of evidence for appellate review. *State v. Riddle* (May 15, 1995), Stark App. No. 94–CA–0336, 1995 WL 507873. Rather, a proper objection must be raised at trial to preserve the error. Id.

{¶ 18} The Ohio Supreme Court discussed the uses of a motion in limine in *State v. Maurer* (1984), 15 Ohio St.3d 239, 259–260, 15 OBR 379, 473 N.E.2d 768, fn. 14, quoting Palmer, Ohio Rules of Evidence, Rules Manual (1984) 446, as follows:

> "The sustaining of a motion *in limine* does not determine the admissibility of the evidence to which it is directed. Rather it is only a preliminary interlocu-

tory order precluding questions being asked in a certain area until the court can determine from the total circumstances of the case whether the evidence would be admissible. When sustained, losing counsel should make a proffer of the otherwise excluded evidence at the proper time during the trial and have a second determination or hearing by the court as to its admissibility. * * *

"Although extremely useful as a trial technique, the ruling in a motion in limine does not preserve the record on appeal. The ruling is as [sic] tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context. An appellate court need not review the propriety of such an order unless the claimed error is preserved by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at trial."

Emphasis omitted.

{¶ 19} "An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *Maurer,* 15 Ohio St.3d at 260, 15 OBR 379, 473 N.E.2d 768, citing *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156. Therefore, a failure to object at trial constitutes a waiver of the evidentiary issue, and, as an appellate court, we need not review the propriety of a grant or denial of a motion in limine if the claimed error was not preserved by a timely objection when the issue was developed at trial. See *Grubb,* supra; see, also, *S.H.Y., Inc. v. Garman,* Union App. No 14–04–04, 2004-Ohio-7040, 2004 WL 2980370, ¶ 25; *State v. Kerr,* Medina App. No. 3205–M, 2002-Ohio-2095, 2002 WL 971769.

{¶ 20} Helm did not properly preserve the issue for appeal. At oral argument, Helm proposed that the issue was properly preserved because the motion was discussed after the jury was impaneled. We find, however, that the motion was discussed prior to the presentation of any evidence and before the court could determine from the evidence presented whether it should be admissible. Helm neither raised an objection to the exclusion of the evidence during trial nor proffered the evidence for our review. Further, Helm never called Wcislek to testify at trial.[4] Helm also failed to request a second and final determination as to the admissibility of the evidence.

---

4. Neither party called Wcislek as a witness. "A witness, though he has indicated previously that he will refuse to testify on the basis that to do so would incriminate him, may still be called as a witness." *State v. Dinsio* (1964), 176 Ohio St. 460, 466, 27 O.O.2d 430, 200 N.E.2d 467. A party has the right to call a witness before a jury despite a prior indication that the

{¶ 21} Accordingly, the issue is not properly before this Court. Therefore, we overrule the second assignment of error.

## Exclusion of Evidence

{¶ 22} In its third assignment of error, Helm argues that the trial court erred in excluding exhibits relating to the disparity between prices paid to Orbit versus prices paid to other vendors.

{¶ 23} Evid.R. 103 provides:

(A) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

* * *

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination.

{¶ 24} Pursuant to this rule, a party may not predicate error on the exclusion of evidence during direct examination unless two conditions are met: (1) the exclusion of the evidence must affect a substantial right of the party, and (2) the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which questions were asked. *State v. Gilmore* (1986), 28 Ohio St.3d 190, 28 OBR 278, 503 N.E.2d 147. Accordingly, a party is not required to proffer excluded evidence in order to preserve any alleged error for review if the substance of the excluded evidence is apparent to the court from the context within which questions were asked. Id.

{¶ 25} The trial court excluded most of Helm's exhibits, which included hundreds of documents. Helm now claims that exclusion of those exhibits greatly affected its right to prove its case. Helm, however, never proffered those exhibits to which it is now assigning error. Although Helm filed those exhibits with this court, we are precluded from considering them because Helm did not proffer them to the trial court. Also, due to the voluminous nature of the exhibits, we find that the substance of the excluded evidence was not apparent from the context in which it was given during trial testimony.

{¶ 26} Moreover, we are convinced that even if the excluded evidence had been admitted, the evidence could not overcome the actual lack of evidence of any

witness intends to invoke his Fifth Amendment rights. *Glanton v. Am. Motorists Ins. Co.* (Dec. 21, 1989), Cuyahoga App. No. 56323, 1989 WL 155149. Helm could have subpoenaed Wcislek and called him to the stand so that he would have had to invoke the Fifth Amendment in front of the jury.

conspiracy between Orbit and Wcislek, and Helm is unable to offer any evidence or legal argument to buttress its claim. See *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996. Therefore, the third assignment of error is overruled.

### Directed Verdict

{¶ 27} In its fourth assignment of error, Helm argues that the trial court erred in granting Orbit's and Wcislek's motions for directed verdict. At the close of all of the evidence, Orbit moved for a directed verdict on its claims and Helm's counterclaim. Wcislek likewise moved for a directed verdict on Helm's third-party complaint. The trial court granted the motions, directing a verdict in favor of Orbit and dismissing Helm's counterclaim against Orbit and claims against Wcislek.

{¶ 28} Ohio Civ.R. 50(A)(4) states:

When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶ 29} A motion for a directed verdict tests the legal sufficiency of the evidence presented; accordingly, neither the weight of the evidence nor the credibility of witnesses may be considered. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 33, 697 N.E.2d 610, citing *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. In addition, all reasonable inferences that may be drawn from the evidence must be made in favor of the nonmoving party. *Rinehart v. Toledo Blade Co.* (1985), 21 Ohio App.3d 274, 21 OBR 345, 487 N.E.2d 920. If substantial, competent evidence has been presented from which reasonable minds could draw different conclusions, the motion must be denied. *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252.

{¶ 30} Because a directed verdict presents a question of law, we review the trial court's judgment de novo. *Hardy v. Gen. Motors Corp.* (1998), 126 Ohio App.3d 455, 462, 710 N.E.2d 764, citing *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 13, 656 N.E.2d 957.

{¶ 31} First, Helm does not argue that the trial court erred in granting a directed verdict on Orbit's principal claim. Instead, Helm premises its assignment of error solely on the dismissal of its claims against Wcislek and its counterclaim against Orbit.

{¶ 32} We will first address Helm's claims against Wcislek. Helm alleged indemnity, breach of the duty of loyalty, breach of his employment contract, unjust enrichment, and civil conspiracy to defraud.

{¶ 33} The rule of indemnity provides that "where a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable." *Reynolds v. Physicians Ins. Co.* (1993), 68 Ohio St.3d 14, 16, 623 N.E.2d 30, citing *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 14, 70 O.O.2d 6, 321 N.E.2d 787. Helm claimed that because of his wrongdoing, Wcislek was obligated to indemnify the company in the event that Helm was held liable to Orbit.

{¶ 34} An employee owes a duty to act in "the utmost good faith and loyalty toward his * * * employer." *Connelly v. Balkwill* (1954), 160 Ohio St. 430, 440, 52 O.O. 329, 116 N.E.2d 701. Where a breach in the employee's duty of loyalty occurs, an employer may sue the employee for the breach. *Sayyah v. O'Farrell* (Apr. 30, 2001), Brown App. No. CA2000–06–017, 2001 WL 433789. Helm claims that Wcislek breached his duty of loyalty by entering into a conspiracy with Orbit to overcharge Helm.

{¶ 35} Helm also alleges that Wcislek breached his employment contract with the company and was unjustly enriched at Helm's expense through his relationship with Orbit. Finally, Helm alleged that Wcislek was part of a civil conspiracy to commit fraud against his employer. Helm claimed that Wcislek entered into a conspiracy with Orbit that included overcharging Helm in exchange for kickbacks to Wcislek and that he knew or should have known that CMA Electronics and Orbit were the same entity.

{¶ 36} A civil conspiracy is a "malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 419, 650 N.E.2d 863. An action for civil conspiracy cannot be maintained unless an underlying unlawful act is committed. *Wilson v. Harvey*, 164 Ohio App.3d 278, 289–290, 2005-Ohio-5722, 842 N.E.2d 83, citing *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 219, 687 N.E.2d 481. Accordingly, Helm cannot prove conspiracy to commit fraud without first proving fraud, the underlying unlawful act.

{¶ 37} The elements of a claim for fraud are
(a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand, (c) made falsely, with

knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Veterinary Dermatology, Inc. v. Bruner,* Hamilton App. No. C–040648, 2005-Ohio-5552, 2005 WL 2679628, quoting *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709. If any of the elements is not proved, the plaintiff cannot recover. Id., citing *Westfield Ins. Co. v. HULS Am., Inc.* (1998), 128 Ohio App.3d 270, 296, 714 N.E.2d 934.

{¶ 38} Helm alleges that Wcislek and Orbit were working together to over-charge Helm for supplies and that Orbit was paying Wcislek for his assistance. Further, Helm claims that once management told Wcislek he could no longer purchase items from Orbit, he conspired with Orbit to purchase parts from Orbit's shell company, CMA Electronics. To support its contentions, Helm argues that Wcislek must have conspired with Orbit because he failed to negotiate with the vendor for lower prices and had to manually input the higher prices into Helm's computer system in order to print the applicable purchase orders. Maya Soldano, owner of Orbit, admitted at trial that it was common in the industry for buyers to negotiate prices with her company but that Wcislek never asked her for lower prices (until after Helm became aware of the high prices). Orbit, however, was a broker of parts, not a distributor. The testimony at trial revealed that brokers typically charge higher prices than distributors or manufacturers. Further, Helm's witnesses testified that the company was often on a "credit hold" with other companies and thus could not buy from those companies. Although the witnesses testified that there were other vendors to buy from, Helm was unable to show that Wcislek deliberately purchased parts solely from Orbit when he could have purchased the same part from another company for a lower price, nor could Helm show any financial link between Wcislek and Orbit.

{¶ 39} Helm also points to Orbit's willingness to deceive Helm in support of its claims against Wcislek. Soldano testified that she started CMA Electronics after Helm stopped doing business with Orbit but claimed it was because Helm refused to pay outstanding invoices and had returned inventory to Orbit. Soldano testified that she developed CMA Electronics as a way to sell the inventory back to Helm without Helm knowing it was really dealing with Orbit. Soldano further admitted that CMA was created exclusively to sell to Helm, which at the time was its only customer.

{¶ 40} In order to prove the conspiracy, however, Helm first had to show that Wcislek conspired with Orbit to overcharge the company and that Wcislek knew about CMA Electronics.[5] A review of the record reveals no such evidence.

{¶ 41} First, Helm's president and vice president both testified that they had no proof or knowledge that Wcislek was improperly involved with Orbit. Helm now claims that Wcislek stated in his exit interview that he knew that CMA Electronics and Orbit were the same company. In fact, Helm's president read into the record a portion of the transcript from Wcislek's exit interview, at which, Helm alleges, Wcislek admitted that he knew CMA Electronics and Orbit were one and the same. The president's recollection of Wcislek's exit interview, however, was that Wcislek did not know about the true identity of CMA Electronics. Further, only a small portion of the interview was read into the record. We find the portion of the exit interview read at trial to be ambiguous. No follow-up questions were posed to the witness, nor was the interview transcript introduced into evidence or proffered for the record. Additionally, Orbit's owner testified that Wcislek "absolutely" did not know that CMA Electronics was the same company as Orbit.

{¶ 42} Helm's witnesses conceded that they had no knowledge of any conspiracy between Wcislek and Orbit and no proof that he received any money from Orbit. Reviewing the evidence in the light most favorable to Helm, we cannot find any evidence that Wcislek was involved in a conspiracy to deceive his employer. Further, there is no evidence of a breach of a duty of loyalty, a breach of contract, any unjust enrichment, or any reason why Wcislek should be responsible for the money Helm owes Orbit. Therefore, we find that the trial court properly granted a directed verdict in favor of Wcislek.

{¶ 43} Regarding Helm's counterclaim against Orbit, the company's only allegation is that Orbit conspired with Wcislek to defraud Helm. Having found no evidence of a civil conspiracy by Wcislek, we therefore also find no evidence of a conspiracy by Orbit. We find that the trial court properly granted a directed verdict on Helm's counterclaim and overrule the fourth assignment of error.

## Sanctions

{¶ 44} In its fifth assignment of error, Helm argues that the trial court erred when it awarded sanctions against Helm and its counsel pursuant to R.C. 2323.51, which provides for an award of attorney fees to a party harmed by "frivolous conduct" in a civil action, and Civ.R. 11.[6]

{¶ 45} R.C. 2323.51(A)(2) defines "frivolous conduct" as any of the following:

---

5.  Helm's counterclaim against Orbit does not allege a claim for fraud.

6.  Helm's counsel did not individually appeal the award of sanctions; therefore, we can consider only the sanctions against Helm.

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

{¶ 46} To determine whether there was frivolous conduct, a trial court must initially determine whether an action taken by the party against whom sanctions are sought constituted frivolous conduct. If the conduct is found to be frivolous, the trial court must determine the amount of attorney fees to be awarded to the aggrieved party. *Cleveland Indus. Square, Inc. v. Dzina,* Cuyahoga App. Nos. 85336, 85337, 85422, 85423, 85441, 2006-Ohio-1095, 2006 WL 562146, citing *Lable & Co. v. Flowers* (1995), 104 Ohio App.3d 227, 232–233, 661 N.E.2d 782.

{¶ 47} The question of what constitutes frivolous conduct may be either a factual determination, e.g., whether a party engages in conduct to harass or maliciously injure another party, or a legal determination, e.g., whether the claim is warranted under existing law. *Curtis v. Hard Knox Energy, Inc.,* Lake App. No. 2005–L–023, 2005-Ohio-6421, 2005 WL 3274990. The ultimate decision whether to impose sanctions for frivolous conduct, however, remains wholly within the trial court's discretion. *Edwards v. Livingstone,* 11th Dist. Nos. 2001–A–0082 and 2002–A–0060, 2003-Ohio-4099, 2003 WL 21782596, ¶ 17; see, also, *Riston v. Butler,* 149 Ohio App.3d 390, 397–398, 2002-Ohio-2308, 777 N.E.2d 857.

{¶ 48} This court has similarly held that a trial court's ruling on a motion to impose sanctions will not be disturbed on appeal absent an abuse of discretion; however, the question of whether a pleading is warranted under existing law is a question of law and will be subject to de novo review by the appellate court. *Goff v. Ameritrust Co., N.A.* (May 5, 1994), Cuyahoga App. Nos. 65196 and 66016, 1994 WL 173544.

{¶ 49} In determining whether the claim itself is frivolous, the test is whether no reasonable lawyer would have brought the action in light of the existing law. *Riston*, 149 Ohio App.3d 390, 777 N.E.2d 857, citing *Hickman v. Murray* (Mar. 22, 1996), Montgomery App. No. CA 15030, 1996 WL 125916. " 'In other words, a claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim.' " Id. at ¶ 30, quoting *Hickman v. Murray* (Mar. 22, 1996), Montgomery App. No. CA 15030, 1996 WL 125916.

{¶ 50} Civ.R. 11 provides a basis by which sanctions may be imposed against an attorney. Civ.R. 11 states, "Every pleading, motion, or other document of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name * * *." The attorney's signature constitutes certification by the attorney of the following: (1) that he or she has read the pleading, motion, or document; (2) that to the best of the attorney's knowledge, information, or belief, the pleading, motion, or document is supported by good grounds; and (3) that the pleading, motion, or document is not interposed for delay. Civ.R. 11. If the rule is willfully violated, or if a scandalous or indecent matter has been inserted, the attorney involved can be subject to sanctions, including attorney fees. Id. Thus, the relevant inquiry is whether Helm's attorney's actual intent or belief was of willful negligence. See *Ceol v. Zion Indus., Inc.* (1992), 81 Ohio App.3d 286, 290, 610 N.E.2d 1076.

{¶ 51} The trial court's decision to impose sanctions pursuant to Civ.R. 11 cannot be reversed absent an abuse of discretion. See *State ex rel. Fant v. Sykes* (1987), 29 Ohio St.3d 65, 29 OBR 446, 505 N.E.2d 966.

{¶ 52} The order imposing sanctions in this case reads as follows:

The Court finds that the conduct of defendant and third party plaintiff Helm in this case is, and has been, from the outset, frivolous as that being so defined in R.C. 2323.51(2)(a)(i),(ii),(iii),(iv), and to an egregious degree. * * * On consideration of all the evidence presented at trial, the Motion for Sanctions and Briefs filed by Orbit and Wcislek, respectively, and the exhibits and arguments of counsel at the hearing on the motion for sanctions, the court finds that: (1) the conduct of [Helm] and its [counsel] in the entire case was frivolous and egregiously so; and (2) plaintiff [Orbit] and third party defendant [Wcislek] were unnecessarily, seriously and adversely affected by it. * * * Helm and its president and its vice president of operations * * * and their counsel knew or reasonably should have known, that their conduct in this case was frivolous, harmful, malicious, unwarranted under existing law, and consisted principally of mere allegations which were unsupported presumptions on their part, made without regard to the harm they were doing to the individual persons involved. Helm's officers knew of the financial and emotional harm they were causing to [Orbit] and to Wcislek. Helm's counsel knew or reason-

ably should have known of this also, and was under a professional, ethical obligation to resolve this matter fairly, but instead, willfully and frivolously chose to further the wrongful, harmful conduct of their client and its officers.

{¶ 53} The trial court then awarded Wcislek $10,876.81 for attorney fees, $543.22 in remuneration for personal expenses and travel, and $5,000 for stress and lost time. The trial court awarded Orbit $27,686 in attorney fees and $10,025 for "miscellaneous."

{¶ 54} After reviewing the sanctions under the applicable standards of review, we find that the trial court did not abuse its discretion in awarding attorney fees but did err in its award to Wcislek for "stress and lost time" and its award to Orbit for "miscellaneous."

{¶ 55} Wcislek never requested compensation for "stress and lost time." Moreover, R.C. 2323.51 provides for an award of attorney fees, court costs, and reasonable expenses. It does not provide for an award based on stress and lost time. Therefore, finding no basis for such an award, we find that the court abused its discretion in awarding $5,000 for "stress, lost time, etc."

{¶ 56} Regarding Orbit, the company requested $30,986 in attorney fees and litigation costs and $3,000 for preparation of the motion for sanctions. During the motion hearing, Soldano testified that Orbit had paid $27,787 in attorney fees. The court failed to discuss in its entry what the $10,025 for "miscellaneous" involved. Also, because Orbit chose not to enter into evidence its exhibits regarding attorney fees and litigation costs, and because the court awarded money outside the scope of the statute to Wcislek, this court cannot presume to know what the trial court meant by "miscellaneous." Therefore, because R.C. 2323.51 contains no provision for "miscellaneous," we find that the trial court abused its discretion in making that award.

{¶ 57} Therefore, we sustain the fifth assignment of error in part. We affirm the award of attorney fees for Wcislek and Orbit and Wcislek's travel expenses but reverse Wcislek's award for stress and lost time and Orbit's award for miscellaneous.

{¶ 58} Accordingly, the judgment is affirmed but the sanctions are modified in accordance with this opinion.

Judgment accordingly.

CALABRESE and BLACKMON, JJ., concur.