[Cite as *BAC Home Loans Servicing, L.P. v. Tabac*, 2013-Ohio-5582.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No.   99724

---

# BAC HOME LOANS SERVICING, L.P., ETC.

### PLAINTIFF-APPELLEE

vs.

# WILLIAM L. TABAC, ET AL.

### DEFENDANTS-APPELLANTS

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-714070

**BEFORE:**   E.A. Gallagher, P.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**     December 19, 2013

**ATTORNEYS FOR APPELLANT**

William L. Tabac
P.O. Box 780
Parkman, OH    44080

Daniel Thiel
75 Public Square
Suite 650
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEES**

Melany K. Fontanazza
Barbara Friedman Yaksic
25550 Chagrin Blvd.
Suite 406
Cleveland, OH    44122

EILEEN A. GALLAGHER, P.J.:

{¶1} William Tabac appeals the decision of the trial court dismissing his counterclaim against BAC Home Loans Servicing ("BAC"). Tabac argues that the trial court erred when it found no genuine issue of material fact regarding appellees' lending practices in the city of Cleveland Heights, his ability to suspend performance of his contract and lastly, in limiting discovery of appellees' lending practices. Finding no merit to the instant appeal, we affirm the decision of the trial court.

{¶2} In 2002, Tabac entered into a loan with KeyBank National Association for $191,200 for the purchase of a home located at 2241 Delaware Avenue in Cleveland Heights, Ohio. Subsequent to the purchase, KeyBank conveyed the note and mortgage to BAC, formerly known as Countrywide Home Loans.

{¶3} In July 2009, Tabac stopped making the required monthly payments notwithstanding his own admission that he could afford those payments. According to Tabac, he stopped paying his mortgage because the value of his property had decreased. After Tabac failed to cure the default, BAC filed a complaint against Tabac for breach of contract and to foreclose on the property. Tabac counterclaimed, arguing that BAC and Countrywide Home Loan, not Tabac, breached the contract. Specifically, Tabac asserted two claims under the Ohio Consumer Sales Practices Act ("CSPA"): first, that through its lending practices in Cleveland Heights, Countrywide's loans to other borrowers adversely impacted the value of his property and second, that through its

lending practices, Countrywide breached the duty of good faith and fair dealing and failed to preserve the value of his property.    Tabac also asserted a claim under the Fair Debt Collection Practices Act, although this claim is not raised on appeal.

{¶4}   The discovery process between the two sides was contentious.  Tabac sought documents and deposition testimony concerning BAC's subprime and pay-option products in Cleveland Heights from 2002 through 2008.   BAC opposed Tabac's requests claiming that Tabac's requests were overly broad, irrelevant, vague and otherwise improper.   After briefing filed by both parties, the trial court ruled that a corporate representative should be produced to testify regarding the years 2002 through 2004 with respect to the following: the number of prime and subprime residential mortgages initiated by Countrywide in Cleveland Heights; the underwriting criteria used to qualify borrowers for each type of loan; the number and kind of loan that became delinquent and/or defaulted; the number and kind of loan that led to the filing of a foreclosure complaint and the number and kind of loans that were modified in Cleveland Heights.

{¶5}   BAC produced Bruce Duclos as the deponent in response to the order. Although Tabac found issue with Duclos' knowledge of prime and subprime mortgages in Cleveland Heights, the trial court found that Duclos "showed himself to be knowledgeable and well versed in the various mortgage products offered by Countrywide.   While he did not work in the subprime lending area, he was still able to

give insight to those lending practices as well."

{¶6} The parties continued to engage in contentious discovery practices up until BAC filed it's motion for summary judgment on May 10, 2012. The trial court granted BAC's motion as to their complaint in foreclosure and against Tabac as to all counts of his counterclaim. In particular, the trial court concluded as follows:

> Pursuant to Civil Rule 56, a party may not rest upon allegations or denials, but must set forth specific facts showing a genuine issue for trial. Defendant was allowed considerable discretion throughout the discovery process to investigate a number of sub-prime loans initiated by Countrywide in the Cleveland Heights area. However, there is still no evidence that brings forth the systematic deficiency of those loans and how they specifically, or how they alone, resulted in the decrease in defendant's property value. As such, defendant's argument must fail. Defendant's breach of contract claim, FSCPA, CSPA, as well as issues of standing also fail as a matter of law. No genuine [issue] of material fact remain[s].

{¶7} Tabac appeals, raising the following three assigned errors:[1]

> The trial court erred when it concluded as a matter of law on the evidence in the record that appellant was not entitled to suspend his performance of the lending contract because of its breach by appellees.

> The trial court erred when it concluded as a matter of law on the evidence in the record that appellees' lending practices in the city of Cleveland Heights, Ohio, did not result in a decrease of the value of Appellant's Cleveland Heights home.

> The trial court erred when it limited, to appellant's prejudice, his discovery of appellees' lending practices in Cleveland Heights.

---

[1]Tabac's fourth and fifth assignments of error were stricken by this court. Additionally, Tabac appeals only the dismissal of his counterclaims against BAC. As such, this court will not address the trial court's grant of foreclosure on the property.

**{¶8}** Tabac's first two assigned errors addressing his claims of breach of contract and the CSPA involve the same standard of review and similar facts thus, this court shall address them contemporaneously.

**{¶9}** We review an appeal from summary judgment under a de novo standard. *Baiko v. Mays*, 140 Ohio App.3d 1, 10, 746 N.E.2d 618 (8th Dist.2000). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997).

**{¶10}** Civ.R. 56(C) provides that, before summary judgment may be granted, a court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191, 1996-Ohio-326, 672 N.E.2d 654.

**{¶11}** The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264. If the movant fails to meet this burden, summary judgment is not appropriate, but if the movant does meet this burden,

summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact.  *Id.* at 293.

**{¶12}** Here, we find the trial court properly granted BAC's motion for summary judgment on each of Tabac's counterclaims.  As noted by the trial court, Tabac failed to establish a causal link between his purported harm and BAC's alleged conduct in issuing loans in Cleveland Heights.  Specifically, Tabac failed to establish the requisite causation between BAC's conduct that he described as "Countrywide's lending practices that contributed to the housing collapse in the City of Cleveland Heights, Ohio" and his alleged harm: the destruction of his property's value.

**{¶13}** As stated by the Sixth Circuit Court of Appeals, there must be "some direct relation between the injury asserted and the injurious conduct alleged."  *Cleveland v. Ameriquest Mtge. Secs., Inc.*, 615 F.3d 496 (6th Cir.2010).  In *Ameriquest*, the city of Cleveland sued numerous banks and lenders arguing that defendants' lending practices caused foreclosures and decreased home values.  In determining that there was no proximate cause between the harm complained of and the alleged wrongful act, the court noted the following:

> [T]he injuries that Cleveland alleges could have been caused by many other factors unconnected to the Defendants' conduct. Companies that sold mortgages to home buyers decided which loans should be made and on what conditions.  Although the complaint alleges that the Defendants sometimes dictated which types of loans to make, these companies ultimately made the decisions regarding where they would seek financing, which types of loans they would market and sell, and, once the mortgagee, whether to keep the mortgage or sell it to another buyer, such as one of the

Defendants. Moreover, home buyers chose to enter into a sub prime mortgage and to default on their loans. And, once the mortgagor defaulted, the mortgagee or his assigns chose to begin the foreclosure process. These voluntary choices were made for a variety of reasons unrelated to the Defendants.

The alleged damages that subsequently occurred — eyesores, fires, drug deals, and looting — were also not directly caused by the Defendants. Homeowners, whether the initial buyers or mortgagees that later took possession of a home, were responsible for maintaining their properties. Fires were likely started by negligent or malicious individuals or occurred because a home was poorly built. Drug dealers and looters made independent decisions to engage in that criminal conduct. Additionally, other companies not listed in the complaint financed sub prime loans and properties not subject to a sub prime loan nevertheless entered into foreclosure. Similar to Holmes and Anza, Cleveland has not stated a viable claim when these actions could have occurred for "any number of reasons unconnected to the asserted pattern of [misconduct]." *Id*. at 458.

{¶14} The court determined that Cleveland failed to state a viable claim when the actions complained of could have occurred for "any number of reasons unconnected to the asserted pattern of [misconduct]." *Id.*

{¶15} Additionally, in *Cleveland v. JP Morgan Chase Bank, N.A.*, 8th Dist. Cuyahoga No. 98656, 2013-Ohio-1035, the city of Cleveland alleged that Chase encouraged mortgage originators to issue subprime loans in order to securitize those loans for profit. In determining that the City failed to establish proximate cause, the court held that "there are several intervening factors necessary for the harm suffered by the City to materialize. This leads to the conclusion that the City's complaint alleges an injury too remote to assert a justiciable claim."

{¶16} The arguments raised by the city of Cleveland in *Ameriquest* and

*Cleveland*, are substantially similar to the argument raised by Tabac. Tabac argues that BAC's lending practices, which he alleges contributed to the housing collapse in Cleveland Heights, destroyed the value of his property. Thus, he argues, BAC breached their alleged duty to preserve his property and violated the CSPA. However, in putting forth these arguments, Tabac failed to establish any causal link between the alleged actions of BAC and Tabac's diminished property value. Even taking Tabac's property valuation evidence on face value, we find no evidence of direct causation between BAC's actions in Cleveland Heights and his diminished home value.

{¶17} There are countless factors that affect a property's value. *Cleveland*; *Ameriquest*. The existence of these myriad independent and intervening factors preclude a causal connection between a particular lender's conduct and the value of a specific property. *Cleveland*; *Ameriquest.* Accordingly, we find no error with the trial court's grant of summary judgment on Tabac's counterclaims against BAC.

{¶18} Tabac's first and second assigned errors are overruled.

{¶19} In his third and final assigned error, Tabac argues the trial court erred when it limited Tabac's discovery requests of BAC's lending practices in Cleveland Heights to the years 2002-2004. Specifically, Tabac argues that the housing collapse did not begin until 2008 and he required evidence of BAC's lending practices for not only the years the trial court authorized, but for each year leading up to the housing collapse. Tabac claims the trial court's limit to his discovery request constituted an abuse of discretion.

We disagree.

{¶20} "[T]he standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion." *Entingh v. Old Man's Cave Chalets, Inc.*, 4th Dist. Hocking No. 08CA14, 2009-Ohio-2242. Therefore, our standard of review is whether the trial court abused its discretion in limiting Tabac's discovery to BAC's lending practices during 2002-2004. An abuse of discretion "implies that the court acted in an unreasonable, arbitrary, or unconscionable manner." *Entingh*.

{¶21} Pursuant to Civ.R. 26(B)(1), the scope of discovery includes "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Notwithstanding the liberal discovery provisions contained in the rules, rulings regarding pretrial discovery lie solely within the discretion of the trial court. *Orbit Elecs., Inc. v. Helm Instrument Co.,* 167 Ohio App.3d 307, 2006-Ohio-2317, 855 N.E.2d 91 (8th Dist.). Absent an abuse of discretion that prejudicially affects a substantial right of the moving party, an appellate court must affirm a trial court's disposition of discovery issues. *Orbit Elecs.*; *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 1998-Ohio-329, 692 N.E.2d 198.

{¶22} In the present case, Tabac's discovery issue is rendered moot by our analysis of his first two assigned errors. The discovery that Tabac did not receive does not and would not affect the outcome of his claims because, as discussed above, there are

countless factors that affect a property's values.  *Ameriquest*; *Cleveland.*

**{¶23}**  Accordingly, we find no error with the trial court's limit of discovery because it would not have affected the outcome of Tabac's case.

**{¶24}**  Tabac's third assignment of error is overruled.

**{¶25}**  The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, PRESIDING JUDGE

TIM McCORMACK, J., and
EILEEN T. GALLAGHER, J., CONCUR